AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

District of South Carolina

| In the Matter of the Search of | |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | Case No. 2:19-cr-558 |

INFORMATION ASSOCIATED WITH THREE computers bearing serial numbers ICLCHL2, 2UA8080TJN, and MXL4501SCO

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of ____South Carolina____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. § 1028A | Aggravated Identity Theft |

The application is based on these facts:

See attached affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Gina Galle, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __May 20, 2019__

_____
*Judge's signature*

City and state:  Charleston, SC

Hon. Bristow Marchant, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT

I, Gina Galle, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for search warrant for information contained on the following computers (referred to collectively as the "USG computers"), all of which are currently secured by the United States Department of State at the United States Embassy in Charleston, SC.:

> a. Two Department of Defense (DoD) computers bearing serial numbers ICLCHL2 and 2UA8080TJN; and
>
> b. One Department of State (DOS) computer bearing number MXL4501SCO.

2. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant pursuant to 18 U.S.C. §§ 1343 and 1028A to review content contained on the USG computers further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

3. I am a Special Agent with United States Army Criminal Investigation Command ("CID"), Major Procurement Fraud Unit ("MPFU") assigned to the Florida Fraud Resident Agency in Melbourne, Florida. I have been a Special Agent with the CID MPFU for approximately nine years. Before working for the CID MPFU, I was employed as an Investigative Auditor for the Defense Contract Audit Agency and supported criminal investigations with the Department of Defense and other agencies. I received a Bachelor of Arts Degree in Accounting from Saint Leo University in 1998. I also obtained a Master of Business



Administration, with a focus in accounting, from Saint Leo University in 2006. In 2009, I

completed a 16-week Federal Special Agent Basic course at the United States Army CID School

in Fort Leonard Wood, Missouri. I have also completed additional specialized training at the

Federal Law Enforcement Training Center in Glynco, Georgia, which included extensive

training in fraud and financial crimes, including procurement fraud, wire fraud, embezzlement,

and international money laundering. As a Special Agent with Army CID, I routinely conduct

white-collar fraud investigations, to include complex procurement fraud, theft of government

property, wire fraud, bribery, kickbacks, money laundering, and other crimes under federal and

state law, including Title 18 of the United States Code. I have participated in investigations of

violations of these laws and regulations, and I am authorized to execute arrest and search

warrants issued under the authority of the United States.

4.      This affidavit contains information I have obtained during the course of this

investigative or that has been provided to me by other Agents involved in the investigation. This

affidavit is intended to show merely that there is sufficient probable cause for the requested

warrant and does not set forth all of my knowledge about this matter.

5.      Based on my training and experience and the facts as set forth in this affidavit,

there is probable cause to believe the violations of 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. §

1028A (aggravated identity theft) have been committed by Roudy Pierre-Louis. There is

probable cause to search the information described in Attachment A for evidence,

instrumentalities, contraband, or fruits of these crimes as further described in Attachment B.

## JURISDICTION

6.      This Court has jurisdiction to issue the requested warrant because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711 and §§ 2703(a), (b)(1)(A), and (c)(1)(A).

Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. 18U.S.C. § 2711(3)(A)(i).

## **PROBABLE CAUSE**

7.     This investigation was initiated by CID MPFU in or on October 2018 and is being worked with Agents from the Department of State – Office of the Inspector General (DOS-OIG). This investigation was predicated based on information provided by Southern Command (SOUTHCOM) that Roudy Pierre-Louis, a DOS employee in the US Embassy in Haiti, falsified financial records in order to obtain cash.

8.     Pierre-Louis was the only Budget Analyst at the US Embassy and managed all Department of Defense (DoD) and DOS lines of accounting for approximately fourteen years. Pierre-Louis resigned his position to relocate to the US under a green card program sponsored by the DOS in August 2018.  SOUTHCOM initiated an audit shortly after Pierre-Louis left the Embassy, which uncovered travel vouchers facilitated by Pierre-Louis in the name of other individuals. The vouchers were for per diem cash advances to attend SOUTHCOM events. Based on interviews conducted in furtherance of this investigation, it has been determined that Pierre-Louis obtained original signatures of key military members that he maintained electronically in order to facilitate these payments.  Through additional interviews, it has been discovered that given Pierre-Louis' tenure with DOS at the US Embassy in Haiti and given that he was the only budget analyst, he was widely regarded as the expert on all finance decisions within the US Embassy in Haiti.

9.     On or about October 30, 2018, I interviewed JJL and MEB, who are both high ranking military members and hold key military positions at the US Embassy in Haiti.  The

purpose of the interviews was to gather information about their signatures, which appear on the following voucher transmittals:

> a. TL-E276 (dated May 2, 2018);
> b. TL-E892 (dated June 28, 2018); and
> c. TL-E893 (dated June 29, 2018).

All three vouchers are for per diem cash advances for Government of Haiti (GoH) members to attend SOUTHCOM events and contain JJL and MEB's signatures multiple times in order to facilitate the processing of the vouchers.

10.    JJL viewed the aforementioned documents and stated he did not sign or approve any of the documents contained in the vouchers. JJL noted the signature is consistent with his signature and relayed that shortly after he arrived at the Embassy, Pierre-Louis requested he provide a copy of his signature in the event there was an emergency that required prompt action. Pierre-Louis told JJL he would maintain the signature electronically on his work computer so that if he ever needed to use the signature in an emergent situation it was available. Further, according to JJL, Pierre-Louis stated he would obtain his verbal approval before using his electronic signature and would also notify JJL of its use. JJL stated he never provided verbal approval and Pierre-Louis never notified him that his signature had been used.

11.    MEB viewed the aforementioned vouchers and stated he did not sign or approve any of the documents contained in the vouchers. MEB relayed that shortly after he arrived at the Embassy, Pierre-Louis requested a copy of his signature to use in the event of an emergency. MEB declined to provide his signature to Pierre-Louis. MEB noted that the signature contained on the vouchers appears to be the same on each document he viewed, but stated that this is not his signature. JJL and MEB both noted that they were instructed to rely on Pierre-Louis for



guidance on financial activity at the US Embassy in Haiti because he was one of the best budget analyst in the region and should be considered their "go to" guy.

12.    After viewing the documents, JJL and MEB identified several other anomalies associated with the vouchers. JJL noted that the dates of the SOUTHCOM events appeared to be incorrect on the documents. Both JJL and MEB stated that SOUTHCOM does not give per diem cash advances to GoH members to go to SOUTHCOM events because SOUTHCOM provides all lodging and food. Further, both JJL and MEB noted DoD form 1610, Request and Authorization for TDY Travel of DoD Personnel is not a form utilized for GoH members. Both relayed that when SOUTHCOM initiated its audit, the documents supporting these vouchers were not maintained in their usual location within the finance department and could only ultimately be found in the cash cage, which both felt was unusual and intentional to avoid detection.

13.    On or about November 7, 2018, I interviewed COL Paul Henderson, Deputy Director, Resources and Analysis for SOUTHCOM who explained that SOUTHCOM only had visibility over the information that was entered into the accounting system as the supporting documentation is maintained at the US Embassy in Haiti. After reviewing the aforementioned vouchers transmittals, COL Henderson reviewed the SOUTHCOM accounting ledger for activity at the Embassy in Haiti and confirmed these items were recorded in the accounting ledger as "Office Supplies." COL Henderson noted that based on the supporting documents he had just viewed, which accompanied the vouchers, the costs for per diem cash advances should have been coded differently. He stated this would have raised a concern at SOUTHCOM because GoH members are not paid per diem for these events. Since SOUTHCOM and DOS remotely manage these funds via access to the financial system, they can only see the information entered into the

system. According to COL Henderson, recording the transactions as office supplies concealed the nature of the actual activity. COL Henderson confirmed that ultimately the source of the funds utilized to pay for these vouchers originated from the Department of the Army Budget Office in Washington, DC and are transferred to SOUTHCOM in Dural, FL via an electronic transfer. Then SOUTHCOM transfers the funds to DOS in Charleston, SC also via an electronic transfer.

14.     According to JJL and MEB, Pierre-Louis utilized multiple US Government computers, belonging to the DoD and DOS. All computers were located in Pierre-Louis' office space at the US Embassy in Haiti and required Pierre-Louis to use his common access card (CAC) to log in. On or about December 15, 2018 DOS Agents located at the US Embassy in Haiti secured the US Government computers for further transport and digital forensic analysis to the DOS-OIG office.

15.     Your affiant submits there is probable cause to believe that records will be stored on the US Government computers for at least the following reasons:

a.     Based on knowledge, training, and experience, your affiant knows that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.



b.      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space — that is, in space on the storage medium that is not currently being used by an active file — for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.      Wholly apart from user-generated files, computer storage media — in particular, computers' internal hard drives — contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.      Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

16.      Based on actual inspection of other evidence related to this investigation including but not limited to vouchers, accounting system documents and electronically completed DoD documents your affiant is aware that computer equipment was used to generate, store, and print documents used in the scheme to falsify financial records using the identity of real individuals which caused the electronic transfers of funds between the DoD and DOS.

17.      **Forensic evidence**. As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how

computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be contained on the US Government computers utilized by Pierre-Louis because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or



controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For



example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.  A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

18.  **Nature of examination**. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise



copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

19.    Based on the foregoing, I request that the Court issue the proposed search warrant. Since the warrant will be served on US Government computers which are already secured by the US Government, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Further your affiant sayeth naught.

Respectfully submitted,

Gina Galle, Special Agent
U.S Army CID - Major Procurement Fraud Unit

Subscribed and sworn to before me
on May **20**, 2019

HON. BRISTOW MARCHANT
UNITED STATES MAGISTRATE JUDGE